UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA MC DONALD,

                                   Plaintiff,

                                                       DECISION AND ORDER

                                                       09-CV-6357L

                  v.

K-2 INDUSTRIES, INC.,
d/b/a Pavilion Gift Company,

                                   Defendant.
_____

BARBARA MC DONALD,

                                     Plaintiff,

                  v.                                      10-CV-6678L

K-2 INDUSTRIES, INC.,
d/b/a Pavilion Gift Company, a New York Corporation,
et al.,

                                   Defendants.
_____

## INTRODUCTION

"In heaven an angel is nobody in particular."  ~ George Bernard Shaw

1

On earth, apparently, things are much different.  In the mundane world of copyright law, an angel – or at least the image of one – can be very much "particular."  This case concerns just such images.

Plaintiff Barbara McDonald brought two actions against K-2 Industries, d/b/a Pavilion Gift Company ("Pavilion") and Zina Hocker, alleging claims for copyright infringement as well as various claims under state law.

Based on a joint stipulation between plaintiff and defendants (10-CV-6678, Dkt. #6), the Court has consolidated the two cases for all purposes (09-CV-6357, Dkt. #45; 10-CV-6678, Dkt. #7).[1]  Defendants have filed a motion to dismiss only the amended complaint in the second action, filed in 2010, 10-CV-6678, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (09 #38).  Since both sides submitted materials outside the pleadings, the Court converted the motion to a motion for summary judgment under Fed. R. Civ. Proc. 56 (09 #52).

## FACTUAL BACKGROUND

Pavilion, a New York corporation, is a wholesale manufacturer of gifts and gift products which are sold at retailers throughout the United States.  (09 #1, ¶¶5-7).  In April 2006, plaintiff, a Florida resident, entered into an Artist Letter Agreement ("Agreement") with Pavilion, pursuant to which she agreed to create and design gift items to be sold by Pavilion.  The Agreement referred to the items that plaintiff would create as "(Pierced Angels and Elements) Name TBD" and "other designs and product as we may mutually agree in the future... ."  (09 #1

---

[1]Subsequent docket entry references will use an abbreviated format, in the form "09 #45."  "09" signifies the docket for the 2009-filed action, and "10" the docket for the 2010 one.  The numbers following "#" are references to the pertinent document number from the referenced docket.

at ¶¶1,¶7).  The Agreement was to remain in effect "as long as Pavilion is producing and promoting the product lines."  (09 #1 at ¶7).  It is undisputed that pursuant to mutual agreement between plaintiff and Pavilion, the "Pierced Angels" line was never developed, and that only the "Elements" line is at issue here.

Under the terms of the Agreement, Pavilion agreed to pay plaintiff a royalty of seven percent of the amount of Pavilion's F.O.B. orders for Pierced Angels and Elements works or other agreed-upon works designed by plaintiff.  (09 #1 at ¶2).  Plaintiff agreed that she would not sell or distribute any Elements designs which had already been designed for Pavilion, or similar works, for or to any third party, during or after the expiration of the Agreement.  (09 #1 at ¶9).  She further agreed to "irrevocably assign" to Pavilion "all worldwide right, title, and interest, including copyright," in all Elements works or designs created by her before or after the date of the Agreement.  (09 #1 at ¶10).

In the 2009 action, plaintiff alleges that pursuant to the Agreement, she has provided Pavilion with original designs, that Pavilion has manufactured and sold products either directly taken from those designs, or based on portions of them, and that Pavilion has failed to pay her the contractually required royalty.  The 2009 complaint thus sets forth claims sounding primarily in contract, and seeks a declaratory judgment, an accounting, compensatory damages and injunctive relief.  (09 #1).

In the 2010 action, plaintiff alleges that she owns copyrights to numerous original works of art, sixty-one of which have been registered with the United States Copyright Office.  Plaintiff alleges that she has also submitted a copyright registration application for one additional work of art.  That application has been denied, but plaintiff still claims a copyright in that work.  (10 #3 at ¶¶ 9-11).

3

Plaintiff alleges that beginning in or about April 2006, she presented Pavilion with original copyrighted works for its consideration, both as part of the Elements line and as proposed non-Elements works.  Pavilion accepted some of those works, but rejected others. According to plaintiff, Pavilion has allegedly copied some of the "rejected" designs without her consent, and has manufactured and sold (and continues to sell), products that are substantially similar to plaintiff's copyrighted works.  (10 #3 at ¶¶15-18).

Based on these factual allegations, plaintiff asserts four claims in the 2010 action:  (1) a claim for direct copyright infringement against Pavilion under 17 U.S.C. §501; (2) a claim for contributory copyright infringement under §501 against defendant Zina Hocker, who is alleged to be the president and chief executive officer of Pavilion; (3) a claim against Pavilion under New York law for unfair competition; and (4) a claim against Pavilion under New York law for unjust enrichment.  Plaintiff seeks injunctive relief, as well as damages in an unspecified amount. (10 #3).

The Court notes that defendants' motion to dismiss (now converted to a motion for summary judgment), which was filed after these actions were consolidated, addresses only the claims raised in the 2010 action, and thus does not implicate any of plaintiffs' claims in the 2009 action.  *See Aetna Cas. and Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, App. A at 4, n.2 (2d Cir. 2005) ("consolidated cases do not lose their separate identity"); *Katz v. Realty Equities Corp. of New York*, 521 F2d 1354, 1358 (2d Cir. 1975) ("[i]t is axiomatic that consolidation is a procedural device designed to promote judicial economy and that consolidation cannot [e]ffect a physical merger of the actions").

In support of their motion for summary judgment, defendants argue that:  (1) a copyright infringement claim cannot be brought as to one of the marks alleged in the complaint, because

4

that mark is unregistered; (2) as to the sixty-one registered marks, plaintiff has failed to plead, or cannot establish, all the elements of a copyright infringement claim; (3) plaintiff's works are not substantially similar to Pavilion's products; (4) plaintiff fails to state a claim for contributory infringement; (5) plaintiff's common law unfair competition claim is preempted; and (6) the unjust enrichment claim is both preempted and barred by the Agreement.

The Court heard extensive argument on the motion to dismiss. The matter was thereafter stayed for an ultimately unsuccessful attempt at mediation. On March 4, 2014, the Court issued an order directing the parties to file additional submissions relative to the converted motion, in the form of a "list" to include: (1) each copyright number in numerical order; (2) illustrations of each protected design at issue; (3) illustrations of each allegedly infringing work ("accused product"), and (4) information as to whether each design and accused product were Elements or non-Elements products. (09 #70). Both parties submitted supplemental papers in response. In addition to its motion to dismiss, defendants have also moved (09 #80) to strike plaintiff's second set of supplemental submissions for failure to comply with the Court's order.

For the reasons that follow, defendants' motion for summary judgment (09 #38) and motion to strike (09 #80) are granted, and the 2010 amended complaint (10 #3) is dismissed in its entirety, with prejudice.

## DISCUSSION

### I. General Standards

Although the Court has converted defendants' motion to dismiss to a motion for summary judgment, I note initially that "[t]here is no heightened pleading requirement applied to copyright infringement claims; a claim of copyright infringement need only meet the pleading

requirements of Rule 8 of the Federal Rules of Civil Procedure." *Levine v. Landy*, 860 F.Supp.2d 184, 191 (N.D.N.Y. 2012) (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 119-121 (2d Cir. 2010)). *See also Blagman v. Apple Inc.*, No. 12 Civ. 5453, 2013 WL 2181709, at *3 (S.D.N.Y. May 20, 2013) ("[a]lthough a plaintiff must describe the acts constituting copyright infringement with some specificity, copyright claims are not subject to particularity in pleading") (internal quotes omitted).

In short, a copyright plaintiff need not plead detailed evidence, but she must allege facts – not just legal conclusions – demonstrating the existence of a facially plausible claim, *i.e.*, that she owns one or more valid copyrights that have been infringed by defendants. *See, e.g.*, *Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009); *National Bus. Dev. Services, Inc. v. American Credit Educ. and Consulting Inc.*, 299 Fed.Appx. 509, 512 (6th Cir. 2008).

In assessing plaintiff's claims, then, the Court imposes no higher burden on plaintiff than on any other civil litigant. Plaintiff must first state a facially valid copyright claim, and, to survive a motion for summary judgment, present evidence from which a reasonable factfinder could find in her favor.

With respect to claims of direct copyright infringement, a plaintiff must allege and ultimately demonstrate, "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright." *Blagman*, 2013 WL 2181709, at *2 (citing *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992), *aff'd without opinion*, 23 F.3d 398 (2d Cir. 1994)). *Accord Ranieri v. Adirondack Dev. Group, LLC*, No. 11-CV-1013, 2013 WL 1292010, at *3 (N.D.N.Y. Mar. 27,

2013); *Ritani, LLC v. Aghjayan*, 880 F.Supp.2d 425, 440 (S.D.N.Y. 2012); *Kuklachev v. Gelfman*, 600 F.Supp.2d 437, 473 (E.D.N.Y. 2009).

Subsumed within the fourth element – the infringing acts – is the issue of substantial similarity. *See Peter F. Gaito Architecture, LLC v. Simone Development Corp.* ("*Gaito*"), 602 F.3d 57, 63 (2d Cir. 2010) ("[i]n order to establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's") (internal quotation marks omitted).

As in many copyright cases, it is on that fourth element that the resolution of this motion depends. Plaintiff has identified numerous copyrights upon which the defendants have allegedly infringed, but the primary question before the Court is whether a reasonable trier of fact could find that the accused products bear substantial similarity to the protectable portions of plaintiff's designs.

In that regard, the requirement that the plaintiff identify both the allegedly infringed works and the infringing acts does not necessarily mean that the plaintiff must identify, element by element, precisely which features are the same or similar between plaintiff's designs and the defendant's products. The Second Circuit has expressly rejected such an analysis, stating that "[t]he standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (internal quotation marks omitted). "In applying the so-called 'ordinary observer test,' [the court] ask[s] whether 'an average lay observer would recognize the alleged copy as having

been appropriated from the copyrighted work.'" *Gaito*, 602 F.3d at 66 (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (internal quotation marks omitted). On occasion, "[w]hen a work incorporates both unprotected and protected elements," the Second Circuit has applied "a 'more discerning observer' test, which requires 'substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work].'" *Belair v. MGA Entertainment, Inc.*, 503 Fed.Appx. 65, 66 (2d Cir. 2012) (unpublished opinion) (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001) (internal quotation marks omitted)).

Regardless of which test is applied, however, the Second Circuit has "disavowed any notion that [a court is] 'required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.'" *Gaito*, 602 F.3d at 66 (quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003)). Rather, in determining the issue of substantial similarity, the court should be "principally guided by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work . . . in the end, [the] inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has 'selected, coordinated and arranged' the elements of his or her work." *Gaito*, 602 F.3d at 66 (internal quotation marks and citations omitted). As such, the ultimate test of a copyright claim boils down to a reasoned application of "common sense." *Gordon v. McGinley*, 502 Fed.Appx. 89, 90 (2d Cir. 2012) ("[w]hether the 'ordinary observer' test or the 'more discerning observer' test is employed, the copyright infringement analysis involves a 'common sense' determination, based solely on the works themselves, as to whether the allegedly infringing work is substantially

similar to the copyrighted work, focusing on 'total concept and overall feel'") (quoting *Gaito*, 602 F.3d at 66).

Admittedly, as the Second Circuit has observed, the "test for infringement of a copyright is of necessity vague," *Gaito*, 602 F.3d at 63 (internal quotation marks omitted), and "presents one of the most difficult questions in copyright law..." *Id.* (quoting 4-13 Nimmer on Copyright §13.03 (2009)).   "For that reason, and because the question of substantial similarity typically presents an extremely close question of fact, questions of non-infringement have traditionally been reserved for the trier of fact." *Id.* (citation omitted).

Nevertheless, there are circumstances where district courts may (and routinely do) decide the issue of substantial similarity as a matter of law.   "[W]here, as here, the works in question are [submitted to the court], the district court may consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Klauber Brothers, Inc. v. The Bon-Ton Stores, Inc.*, 557 Fed.Appx. 77, 80 (2d Cir. 2014) (internal quotation marks omitted) (unpublished opinion).   Once the works are evaluated and compared, summary judgment is appropriate if the visual similarity between the copyrighted and accused works "concerns only non-copyrightable elements of the plaintiff's work, or [if] no reasonable jury, properly instructed, could find that the two works are substantially similar."   *Gaito*, 602 F.3d at 63.   *See also Belair*, 503 Fed.Appx. at 66-67 ("it is 'entirely appropriate' for a district court to resolve the question of substantial similarity as a matter of law") (quoting *Gaito*, 602 F.3d at 63-64).

## II.    Defendants' Motion to Strike

It was to facilitate the kind of side-by-side comparison required for assessment of the "substantial similarity" question that the Court issued its March 4, 2014 Order (09 #70) asking the parties to each present, in the form of a list or chart, information concerning the copyrights, designs, and products at issue.  (Although an assortment of images of the copyrighted designs and accused products was already before the Court, those images had not been organized into a particularly clear or useful form.)  In response, defendants submitted a detailed chart, over 250 pages in length, listing each of the copyrights, designs, and products at issue, complete with pictures of each copyrighted design and accused product, and information as to whether each subject design and product had been submitted or produced as part of the Elements line.  (09 #72-1–#72-13).

In contrast, plaintiff submitted a collection of over 600 pages representing copies of the copyright filings at issue, along with photographs of various catalog pages advertising defendants' products and other pieces of documentary evidence, such as correspondence.  (09 #73-#79).  None of the information is organized into a list or chart, some of the products accused in some claims appear to have been changed without explanation, and to the extent that the majority of plaintiff's claims involve allegations that accused products simultaneously infringed on aspects of multiple designs, it is unclear which of the many depicted designs are copyrighted separately, if in fact they are copyrighted at all.

Overall, plaintiff's submission has frustrated the Court and has obfuscated the issues, rather than assisting the Court in understanding the nature and breadth of plaintiff's claims, especially as to the key issue of "substantial similarity."  Defendants have moved to strike

plaintiff's second supplemental submissions on that basis, and the Court concurs.  Plaintiff's

second set of supplemental submissions in opposition to the defendants' motion for summary

judgment (9 #73, #74, #75, #76, #77, #78, and #79) is accordingly stricken.  The Court notes that

even assuming *arguendo* that plaintiff's submissions were considered, they are so confounding,

and contain so little material of clear relevance, that they would do nothing to advance plaintiff's

claims or to counter the instant motion for summary judgment.

## III. Defendants' Motion For Summary Judgment

Plaintiff's copyright claims can be broken down into two main categories.  The first of

these includes works that plaintiff allegedly submitted for consideration outside the Elements

line.  Plaintiff alleges that Pavilion has produced these products (some as part of the Elements

line, and others in other lines) without her approval and/or without compensation.

*See* McDonald Supp. Decl., 10 #57 at ¶ 13.

Second, plaintiff alleges that Pavilion purported to reject some works that she submitted

for the Elements line, but then used those works, or substantially similar works, nonetheless.  *See*

McDonald Supp. Decl., 10 #57 at ¶ 17.  Plaintiff alleges that since Pavilion "rejected" those

works, she never relinquished her copyright in them.

To the extent that Pavilion sold works that were both submitted by plaintiff as Elements

designs, *and* produced as Elements products by Pavilion, I note that those claims are clearly

governed by the Agreement, and that plaintiff has no copyright claim as to them.  Plaintiff

"irrevocably assign[ed]" to Pavilion "all worldwide right, title, and interest, including

copyright," in all such works and designs.  (09 #1 at 10, ¶ 10.)  Plaintiff may be able to recover

damages under the Agreement, if Pavilion has failed to pay her the royalties it requires, but her

claims that exclusively involve Elements designs *and* products (specifically, her claims

pertaining to Copyright Numbers 4, 18, 26, 32, and 39)[2] are properly decided under plaintiff's

2009 complaint sounding in contract, and not as copyright claims.  Those claims are therefore

dismissed.[3]

The defendants also move to dismiss a number of plaintiff's claims for which she

identifies a copyright, but fails to specify or accuse a single allegedly-infringing product

(Copyright Numbers 8, 36, 42 and 55).  Because plaintiff has failed to allege and/or offer

evidence that the defendants produced any infringing products relative to these copyrights,

summary judgment is appropriate on those claims as well, and they are dismissed from the 2010

amended complaint.

With regard to plaintiff's remaining claims of copyright infringement, the Court has

undertaken a painstaking, side-by-side comparison and analysis of plaintiff's copyrighted

designs and the accused products, and has made individualized findings of fact with regard to

each of the subject copyright claims, a summary of which is annexed as Exhibit A, and

incorporated herein by reference.  Upon a careful and detailed review of the evidence of record, I

find that even applying the most lenient available standard, that of the "ordinary observer," no

reasonable trier of fact could find that any of the accused products are "substantially similar" to

the plaintiff's copyrighted designs.

---

2   For the sake of clarity, the Court will refer to each of the 62 claimed copyrights at issue using the reference
numbers assigned by the July 31, 2013 declaration of Carla Ford, and utilized by the parties in subsequent filings.
(09 #54-3 and exhibits thereto).  Exhibit A, annexed hereto, contains a chart which lists both the reference numbers,
and the actual copyright (or application) numbers, for each of the claimed copyrights.

3   Defendants urge the Court to find that the Agreement's assignment of copyrights embraces all claims involving
products that were designed for the Elements line and allegedly produced as part of another line, and those allegedly
designed outside of the Elements line, but produced under it.  (09 #92 at 5-6).  For purposes of the instant motion,
and in the interest of construing all inferences in plaintiff's favor and addressing her claims on the merits, I decline
to interpret the Agreement so expansively at this juncture, and will assume *arguendo* that claims involving designs
(or combinations of designs) and products (or combinations of products) which do not fall entirely within the
Elements line, should proceed to a "substantial similarity" comparison analysis.

Initially, I note that the overwhelming majority of plaintiff's copyrighted designs represent her expression of a "basic idea" (or combination of basic ideas) well-known in the public domain, such as a red cardinal, a tree, a rose, an angel in the form of a winged woman, a Santa Claus figure in a red suit, a "three-ball" snowman, a heart shape, a cruciform (cross) shape, paisley patterns, stripe patterns, and decorative scrollwork.  It is well settled that basic ideas are not protectable by copyright.  "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular *expression* of an idea and never to the idea itself."  *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir. 1976) (emphasis added).  As such, traditional or quasi-natural depictions of ideas such as animals, angels, snowmen, or holiday-themed images and verbiage like holly berries and the word "joy," are not protectable ideas. *Id.  See Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500 (2d Cir. 1982) ("[b]earing in mind the traditional characteristics of all snowmen, we find no error in [the lower court's] conclusion that any similarity between [stuffed toy snowmen] would appear to the ordinary observer to result solely from the fact that both are snowmen"); *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974) (copyright protection does not extend to the idea of a gold turtle pin with an oval cluster of gems conforming to the normal shape of a turtle's back, "[s]ince all turtles are created more or less along the same lines"); *Great Importations, Inc. v. Caffco International, Inc.*, 1997 U.S. Dist. LEXIS 10700 at *11-*12 (S.D.N.Y. 1997) (the combination of angels, holly, and the letters of the word "joy" as "Christmas appurtenances" is not protectable: similarly, the "stereotypical attributes of baby angels or cupids" such as round cheeks, smiling or bemused expressions, and the wearing of loose robes or drapery, follow a "common theme" which is not protectable).  *See generally Lapine v. Seinfeld*, 375 Fed.Appx. 81, 83 (2d Cir. 2010) (an idea cannot be copyrighted); *New*

13

*York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.*, 497 F.3d 109, 116 (2d Cir. 2007) ("[i]t has been long accepted that copyright protection does not extend to ideas; it protects only the means of expression employed by the author") (internal quotation marks omitted).

Thus, it is only plaintiff's particular *expression* of the basic ideas she employs – the original and artistic way in which she has chosen to select, combine, arrange and represent them – that is protectable. *See Gaito*, 602 F.2d at 66. *See also Cameron Industries, Inc. v. Mother's Work, Inc.*, 338 Fed.Appx. 69, 70 (2d Cir. 2009) (equating "protectable" with "artistic" aspects of a work); *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) (protection extends only to a work that is "original to the author," meaning "a work that comes from the exercise of the creative powers of the author's mind").

In addition to claiming infringement with regard to her expression of a number of basic ideas, plaintiff also attempts to assert "aggregated" copyright claims.  Specifically, plaintiff contends that the defendants infringed on her protected work, not by replicating designs from a single copyright, but by "cherry picking" various elements from several different copyrighted designs, and then cobbling them together, often resulting in a product with an entirely different form or intended purpose than plaintiff's designs, but which, according to plaintiff, nonetheless infringes upon the several unrelated designs as a whole.

Plaintiff presents no authoritative case law supporting her theory that such allegations of aggregated copyright infringement are cognizable.  To the contrary, "nothing in the Copyright Act of 1976 (which refers to the infringed 'work' in the singular) or in the precedents of [the Second] Circuit supports the view that a plaintiff's entire oeuvre [(body of work)], *or even an aggregated portion of it*, may be used as the point of comparison [against an allegedly infringing product] where the works included [in plaintiff's body of work or aggregated portion of it] bear

14

little or no relation to one another…" *Kroencke v. General Motors Corp.*, 270 F. Supp. 2d 441, 444 (S.D.N.Y. 2003) (dismissing copyright claim by plaintiff who alleged that defendant's graphic art infringed upon seven different works by plaintiff, by imitating details of their human subjects such as poses, hands, shoes, and eyelashes) (emphasis added).

Indeed, since it is well settled that copyright protection for basic ideas is intended to safeguard the particular way in which an artist "selected, coordinated and arranged" the elements of a work, *Gaito*, 602 F.2d at 66, it is difficult to imagine how plaintiff's allegations that the defendants infringed upon her copyrighted works by means of "selecting" minor elements of multiple unrelated copyrighted works, and then "coordinating" and "combining" them into *something completely different* from any of her designs, could possibly establish a claim for infringement. As such, I note that plaintiff's attempt to rely on the aggregation of discrete fragments of multiple, unrelated and dissimilar copyrighted works in order to demonstrate overall "substantial similarity" of accused products is not tenable in the first instance.

Furthermore, even assuming *arguendo* that plaintiff's aggregated copyright infringement claims (which comprise the vast majority of her allegations) could be properly considered along with her "standalone" infringement claims involving a single copyrighted design, the accused products nonetheless lack substantial similarity to plaintiff's copyrighted works. In order to grant plaintiff the benefit of every favorable inference, the Court has included plaintiff's aggregated or fragmented copyright infringement claims in its individualized analysis of the copyrights and accused products at issue, and has concluded with regard to each that any alleged similarity concerns only non-copyrightable, "basic idea" elements of the plaintiff's work, and/or that no reasonable, properly-instructed jury could find that the accused works are substantially similar to plaintiff's designs. *See* Exhibit A.

15

Discussion of some representative claims illustrates the point.  For example, in several of her contentions, plaintiff alleges that one particular Pavilion product (a tiered pedestal, anchoring a stylized three-dimensional tree made up of spiraling wire branches, decorated with 5-petaled blossoms, leaves, a nest with eggs, and figures of a cardinal, a chickadee and another bird) infringes on at least four different copyrights, for: (1) Victorian-style floral artwork of roses, vines, lilies, insects and 5-petaled blossoms and leaves (Copyright Number 7, 10 #3-1 at 54-55); (2) a design for an avian-themed candleholder, consisting of a portion of a tree limb, upon which rests a nest-shaped votive holder and a bird figurine (Copyright Number 31, 10 #3-2 at 7-8); a design for a minimalist, bare-branched "Charlie Brown"-style Christmas tree decorated with a star and round ball ornaments (*id.*); a holiday ornament comprised of a Christmas wreath with a sleigh bell suspended in the center, with the figure of a bird perched on top (*id.*); a tiered pedestal taper candleholder (Copyright Number 37, 10 #3-2 at 15-16); greeting card art showing a holly wreath, decorated with poinsettia flowers, with a chickadee perched on a branch in the center of the wreath (Copyright Number 17, 10 #3-1 at 62-63); and additional sketches of birds and arabesques (spirals) which are not a readily-apparent part of any copyrighted material, but which the Court assumes *arguendo* are protected.

Notwithstanding plaintiff's claim that the Pavilion tree infringes on her copyrighted designs for images of 5-petaled blossoms, pedestal candlesticks, spiral shapes, birds, and a tree, each of these concepts are "basic ideas" which are not, by themselves, protectable.  *See generally Eden Toys, Inc.*, 675 F.2d 498 at 500.

It is manifest on visual inspection that the accused Pavilion tree does not reproduce the subject matter or composition of any of plaintiff's designs precisely, or otherwise replicate her "aesthetic decisions" with regard to the selection, coordination or arrangement of ideas and

16

images. *Gaito*, 602 F.3d at 66. For example, the birds on the Pavilion tree are posed differently from those shown in plaintiff's bird designs, the proportion and scale of the flowers and leaves on the Pavilion tree is different from that of plaintiff's graphic art of flowers and leaves, the spiraling branch tips on the Pavilion tree are more elaborate than plaintiff's spirals, the Pavilion tree's branches are comprised of curved wires of a single width instead of the straight, spiky, tapered branches of plaintiff's tree design, and the Pavilion tree pedestal has a shape, number of tiers, color scheme and decorative pattern that is different from plaintiff's candlestick design in every respect. Furthermore, the overall "feel" of the accused product is different from that of plaintiff's designs; the Pavilion tree is rendered with a simplistic, whimsical character, with floral accents and an egg-filled bird nest suggesting spring or summer. In contrast, plaintiff's subject designs are rendered in a more realistic and even formal style, and several are overtly themed to winter and/or the Christmas holiday season, illustrated in the traditional color palette of red and green, or including other seasonal accoutrements such as holly, poinsettia flowers, and a sleigh bell.

In sum, the elements that the accused Pavilion tree has in common with plaintiff's designs do not represent a protectable combination of plaintiff's original, creative expressions of basic ideas: the common elements consist exclusively of the *basic ideas themselves* (a cardinal, a chickadee, a nest, a pedestal, a tree, flowers, spiral shapes), combined and composed in a manner not suggested by any of plaintiff's designs, and evoking an entirely different mood and feel. The alleged similarities between the two thus concern non-protectable elements of the plaintiff's work, and to the extent that they might share any protectable ideas, I find that no reasonable trier of fact could conclude that Pavilion's spiral-tipped wire tree with birds of different species,

flowers and an egg-filled nest is "substantially similar" to plaintiff's various, unrelated designs for taper candle holders, Christmas decorations and décor, and floral artwork.

Other claims by plaintiff spring from her allegations that Pavilion infringed upon her copyrighted designs by using particular decorative techniques or graphic art patterns: lace patterns, paisley patterns, scroll borders, rope borders, stripes, metallic accents, folk art-style flowers, collages of three-dimensional textures and patterns, embossing, debossing and piercing.

For example, plaintiff claims that Pavilion produced multiple products that violate her copyright for a set of coordinating "Scroll Christmas Patterns," which includes a particular border of repeating, connected scrollwork positioned between horizontal lines.   (Copyright Number 52, 10 #3-2 at 54-55).   The scrollwork is comprised of cream-colored curling shapes with irregular edges (resembling leaves or feather plumes) and flowers, outlined in black, and highlighted by contrasting background colors: dark green above the scrolls, and light green below, with even, horizontal stripes of black, cream and red in varying widths above and below the scrollwork border.   The accused products include a decorative red, green and cream-colored Christmas plate with a scroll border, a line of coordinating Christmas tableware (bowl, plate and cake plate) with a scroll border, and a finial-style Christmas tree ornament with a scrollwork cross design.   While all of the accused products feature scrollwork rendered in Christmas colors, none of that scrollwork particularly resembles plaintiff's scrollwork design.   In every case, the accused "scrollwork" designs are comprised of lines of uniform width with no irregular edges (not suggesting the appearance of curled leaves or feathers, but rather of unadorned vines), not visibly repeating, not outlined, not employing different colors above and below the scrolls, and unenhanced with flowers or other decorative details.   The use of scrollwork as a decorative element is not by itself unique – it has been commonplace for centuries – and the dramatic and

clearly-identifiable differences between plaintiff's ornate scrollwork design and the simple vine pattern on the accused products are sufficiently numerous that they represent an entirely different style and theme. The only apparent similarity between plaintiff's design and the accused products is the mere combination of scrollwork with a traditional Christmas color palette; both non-copyrightable, "basic ideas." To the extent that plaintiff's design does contain her own unique, artistic and protectable interpretation of holiday-themed scrollwork, I find that no reasonable trier of fact could find that any of the accused products are substantially similar to the protectable portions of her design. *See e.g.*, *Klauber Brothers, Inc.*, 557 Fed. Appx. at 80 (district court properly dismissed copyright claim involving lace waistband designs on the grounds that there was no substantial similarity, where both designs contained curling sprigs, leaves and flowers, but the accused designs could be distinguished by longer, winding and more delicate designs, with leaves of a different shape and size, and flowers represented by blossoms growing downward, in contrast to the upward-growing buds of plaintiff's design, with "the accumulation of these differences giv[ing the accused product] a substantially different 'total concept and overall feel' than [plaintiff's] designs") (quoting *Gaito*, 602 F.3d at 66).

The examples discussed above are representative of plaintiff's claims, but by no means exhaustive. Again, the Court has carefully compared all of plaintiff's copyrighted designs with the accused products, and has determined in each case that the alleged similarity concerns only non-copyrightable elements of the plaintiff's work, and/or that no reasonable jury, properly instructed, could find that the two works are substantially similar. *See* Exh. A (chart containing the Court's particularized findings of fact with respect to each remaining copyright claim).

In addition to the fact that the evidence of record fails to raise a triable question of fact concerning the issue of substantial similarity for any of plaintiff's copyright infringement claims,

19

the Court also notes that with respect to Copyright Numbers 3, 9, 10, 13, 15, 22, 25, 34, 45, 49, 56, and 59, Pavilion has presented uncontroverted evidence (including copies of original designs and invoices) that some or all of the products accused in those claims were designed by third parties and not by plaintiff, and that those parties were compensated for their work.  Visual comparison of the third party designs with the accused products reveals them to be substantially similar, and in some cases, identical.  Plaintiff's claims with regard to those products are therefore dismissed in any event.

## IV. Unregistered Mark

Defendants also assert that, with respect to at least one of her works, plaintiff has not met the third element of a claim of copyright infringement, because she has not alleged that she registered all of her works prior to filing this lawsuit.  Among the works that form the basis of plaintiff's copyright claims is one for plate shapes ("Copyright" Number 61), as to which plaintiff applied for copyright protection, but was denied.

A claim for copyright infringement requires a copyright holder to first register his work before filing suit. 17 U.S.C. §411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157-158 (2010).  In *Reed Elsevier*, the Supreme Court concluded that registration of a copyright is not a jurisdictional requirement, but rather "imposes a type of precondition to suit." *Id.*, 559 U.S. at 166.

The Second Circuit has not addressed the specific question of whether mere application or actual issuance of registration is required to bring a claim for copyright infringement. However, this Court need not resolve the issue here; having reviewed the subject copyright

application and the accused product (10 #3-3; 09 #72-13 at 15-19), I find that regardless of whether plaintiff may claim a copyright interest in the unregistered work, her claims concerning it are subject to dismissal, because no reasonable trier of fact could find that plaintiff's designs are "substantially similar" to Pavilion's accused plates, the first of which is simply a square shape (a basic idea), and the second of which has a more unusual, 12-sided shape with decorative scalloped edges that does not resemble any of the shapes which plaintiff attempted to copyright. *See* Exh. A.

## V. Plaintiff's Claims for Contributory Infringement, Unfair Competition and Unjust Enrichment

Plaintiff's claims for contributory infringement against individual defendant Hocker, and for unfair competition and unjust enrichment against both defendants, are predicated on her claims of copyright infringement.  Because I find that no reasonable trier of fact could find in plaintiff's favor on her copyright infringement claims, her claims of contributory infringement, unfair competition and unjust enrichment are likewise dismissed.  *See e.g., Faulkner v. National Geographic Enters., Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) (claim for contributory infringement cannot lie, absent actual infringement); *Porto v. Guirgis*, 659 F. Supp. 2d 597, 616-617 (S.D.N.Y. 2009) (where the underlying claims of direct copyright infringement have been dismissed, claims for unfair competition and unjust enrichment claims must be dismissed).

## CONCLUSION

For the foregoing reasons, defendants' converted motion for summary judgment (09-CV-6357, Dkt. #38) and motion to strike (09-CV-6357, Dkt. #80) are granted.  Plaintiff's 2010

amended complaint (10-CV-6678, Dkt. #3) is dismissed in its entirety, with prejudice.  Plaintiff's

2009 complaint (09-CV-6357, Dkt. #1) is now the sole operative complaint in this action.

      IT IS SO ORDERED.

_____

DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      June 10, 2015.